FILED
2024 Mar-11  PM 01:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## <u>SOUTHERN DIVISION</u>

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) **No. 2:23-cr-00311-LSC-GMB** |
| | ) |
| **JOHN WESTLEY ROGERS, JR.,** | ) |

## <u>PLEA AGREEMENT</u>

The United States and the defendant, **JOHN WESTLEY ROGERS, JR.,** hereby acknowledge the following Plea Agreement in this case:

## <u>PLEA</u>

The Defendant agrees to (i) plead guilty to Counts One and Twenty-Six of the Second Superseding Indictment filed in the above-numbered and -captioned matter; (ii) immediately resign from the Alabama House of Representatives upon the court's acceptance of his guilty plea; (iii) consent to forfeiture as described in Section XII below; (iv) pay restitution of $197,950.45 to the Jefferson County Community Service Fund; and (v) waive certain rights to direct appeal and collateral attack as outlined in Section IV of this Agreement.  In exchange, the United States Attorney, acting on behalf of the United States and through the undersigned Assistant United States Attorney, agrees to dismiss the remaining counts in the Second Superseding Indictment and to recommend the disposition specified below, subject to the conditions in Section VII.

Defendant's Initials

## TERMS OF THE AGREEMENT

### I.   MAXIMUM PUNISHMENT

The Defendant understands that the maximum statutory punishment that may be imposed for Conspiracy to Commit Mail and Wire Fraud, in violation of Title 18, United States Code, Section 1349, as charged in Count One, is:

**A.**   Imprisonment not more than 20 years;

**B.**   A fine of not more than $250,000, or,

**C.**   Both A and B;

**D.**   Supervised release of not more than three years; and

**E.**   A special assessment of $100.

The Defendant understands that the maximum statutory punishment that may be imposed for Conspiracy to Obstruct Justice, in violation of Title 18, United States Code, Section 371, as charged in Count 26, is:

**A.**   Imprisonment not more than 5 years;

**B.**   A fine of not more than $250,000, or,

**C.**   Both A and B;

**D.**   Supervised release of not more than three years; and

**E.**   A special assessment of $100.

Defendant's Initials

## II.    <u>FACTUAL BASIS FOR PLEA</u>

The United States is prepared to prove, at a minimum, the following facts at the trial of this case:

Defendant **JOHN WESTLEY ROGERS, JR.** was a member of the Alabama House of Representatives elected to represent the citizens of District 52 in Jefferson County, Alabama. Fred Lee Plump, Jr. served as Executive Director of the Piper Davis Youth Baseball League ("Piper Davis"). Piper Davis was a nonprofit organization that claimed to provide a positive experience for inner city youth in Jefferson County through sports. Varrie Johnson Kindall was defendant Rogers personal and professional assistant. Additionally, she had romantic relationships with both defendant Rogers and Plump.

Alabama Act No. 2015-226 (the "Act"), passed by the Alabama Legislature in 2015, authorized the Jefferson County Commission to levy and distribute a one percent sales tax and one percent use tax to benefit the public welfare and enhance the education of the children of Jefferson County. According to the Legislature, these new taxes were necessary because Jefferson County was experiencing financial difficulties as it concluded bankruptcy proceedings and faced the invalidation of its occupational tax.

The Jefferson County Commission adopted resolutions levying the new taxes authorized by the Act beginning August 1, 2017. The Act required the County to distribute the tax revenue according to certain specified priorities, including paying debt incurred during school construction, increasing the County's general fund, giving funds to each board of education serving students in the County, and for certain other purposes set forth in the Act.

The Act created the Jefferson County Community Service Fund (the "Fund"), which was subsidized by approximately $3.6 million annually from the new taxes. The Fund was allocated equally between the Jefferson County House Delegation and the Jefferson County Senate Delegation. Further, the Fund was allocated equally among the members of the Jefferson County House delegation and the Jefferson County Senate delegation.

The Act also created the Jefferson County Community Service Committee (the "Committee"), the four members of which were elected by members

Defendant's Initials _____

of the Jefferson County House and Senate delegations. The Committee was responsible for ensuring that the Fund was used only for the purposes set forth in the Act, which included to support public schools, public roads, public libraries, public museums, public parks, public zoos, neighborhood associations, public athletic facilities, public youth sports associations, public sidewalks, public trails, public greenways, the performing arts, police departments, the sheriff's office, fire departments, and certain nonprofit entities.

Each Representative and Senator representing Jefferson County could make recommendations to the Committee of expenditures from their allotted amount of the Fund. These recommendations were made on a Delegate Request Form created by the Committee that required certain certifications by the legislator. Additionally, the organization receiving the funds was required to submit information about the organization and confirm that it intended to use the money for a public purpose. The Delegate Request Forms and additional information were often submitted by email that caused wire communications in interstate commerce. After conducting its review, the Committee mailed a letter to each organization, and sent an email to the sponsoring legislator, stating the amount of Fund money awarded.

The Committee began reviewing recommended expenditures and distributing Fund money in or about September 2018. During each fiscal year between 2018 and 2022, each Representative was allocated approximately $100,000 and each Senator was allocated approximately $240,000 from the Fund.

Beginning in fiscal year 2018 and continuing through fiscal year 2022, defendant John Westley Rogers, Jr., was allocated approximately $500,000 by the Fund. Defendant Rogers directed approximately $400,000 of those discretionary funds to Piper Davis. In turn, Fred Lee Plump, Jr., gave approximately $200,000 to defendant Rogers and Varrie Johnson Kindall.

Defendant John Westley Rogers, Jr. also directed money from the Fund to Organization #1. Individual #1, who was the Founder of Organization #1, gave a portion of that money to defendant Rogers and Varrie Johnson Kindall.

### The Fraud Conspiracy

From in or about March 2019, and continuing to in or about April 2023, the exact dates being unknown, within Jefferson County, in the Northern District of Alabama, and elsewhere, defendant Rogers did knowingly combine, conspire, and

Defendant's Initials

agree with Plump, Kindall, and others known and unknown to devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and to cause to be delivered by mail according to the direction thereon, and to transmit or cause to be transmitted by wire communication any writing, sign, picture, signal or sound in interstate commerce, for the purpose of executing the scheme or artifice, in violation of Title 18, United States Code, Sections 1341 and 1343.

## **Manner and Means**

It was part of the conspiracy that defendant Rogers, in his capacity as an Alabama State Legislator and with Kindall's assistance, would and did recommend during each fiscal year that most of his allotment of Fund money be paid to Piper Davis. Each recommendation was made on a Delegate Request Form that required defendant Rogers to certify that he had not asked for anything of value for making the recommendation and that Piper Davis's use of the funds would qualify under the purposes listed in the Act. These forms were submitted by email and caused interstate wire transmissions.

In or about March 2019, defendant Rogers called Plump "out of the blue" and offered to provide a donation to Piper Davis. Soon thereafter, during a meeting at defendant Rogers' office in Jefferson County, defendant Rogers and Kindall demanded that Plump pay half of the money Piper Davis received back to them as kickbacks. Plump agreed because he understood that he would not receive Fund money if he did not pay the kickbacks to defendant Rogers and Kindall. Defendant Rogers and Kindall helped Plump complete the Delegate Request Form that defendant Rogers was required to submit to the Committee, and defendant Rogers signed and sent the form to the Fund via email. The form contained material misrepresentations, including the statement about the intended use of the money, and concealed that defendant Rogers and Kindall were to receive half of the money. After the form was submitted, the Fund Administrator contacted Plump via email with a request to provide additional information about Piper Davis. Plump provided the requested information by email. These submissions also included similar misrepresentations and concealments. Each of these emails caused interstate wire transmissions.

Contemporaneously, defendant Rogers and Kindall contacted the owner of a dance studio and offered money from the Fund. Defendant Rogers and Kindall offered to give the owner $10,000 of Fund money if she promised to give defendant

Defendant's Initials _____

Rogers and Kindall $5,000 of the funds in return. The owner refused. Defendant Rogers and Kindall then offered $20,000 with a kickback of $10,000. The owner again refused.

From the beginning of the conspiracy through fiscal year 2022, defendant Rogers directed Fund money to Piper Davis on nine occasions for a total of approximately $400,000. Plump, in turn, wrote 10 checks to Kindall totaling approximately $200,000. Plump wrote "dance team" or cheerleading on some checks to conceal that the payments were kickbacks. Defendant Rogers and Kindall delivered the Fund checks to Plump at the Piper Davis baseball field. After the checks cleared Piper Davis's bank account, defendant Rogers and Kindall returned to the Piper Davis baseball field to retrieve checks that Plump wrote to her. Defendant Rogers was with Kindall on eight of the ten occasions that Kindall received a check from Plump.

This chart shows the checks from the Fund and payments to defendant Rogers and Kindall:

| Fund checks to Piper Davis | | Piper Davis checks to Kindall | |
|---|---|---|---|
| **DATE** | **AMOUNT** | **DATE** | **AMOUNT** |
| 03/20/2019 | $21,000.00 | 04/08/2019 | $10,000.00 |
| 06/21/2019 | $21,002.22 | 06/24/2019 | $15,000.00 |
| 11/15/2019 | $80,000.00 | 11/25/2019 | $40,000.00 |
| 05/14/2020 | $13,300.91 | 06/03/2020 | $6,650.45 |
| 11/05/2020 | $65,000.00 | 11/11/2020 | $3,250.00 |
| | | 11/12/2020 | $29,250.00 |
| 02/09/2021 | $28,518.00 | 02/24/2021 | $14,000.00 |
| 01/13/2022 | $50,000.00 | 02/03/2022 | $25,000.00 |
| 06/07/2022 | $26,955.45 | 06/20/2022 | $13,000.00 |

Defendant's Initials

| 12/07/2022 | $80,000.00 | 12/20/2022 | $40,000.00 |
| --- | --- | --- | --- |
| **TOTAL** | **$385,776.58** | | **$196,150.45** |

Each time defendant Rogers submitted a recommendation form to the Fund for Piper Davis, it was false with respect to the stated intended use of the funds and defendant Rogers' certifications. The Committee requested information from Plump in support of the recommendations. In response, Pump provided false and fraudulent information to the Committee, sometimes by email, about Piper Davis's intended use of Fund money, and he concealed that defendant Rogers and Kindall were receiving half of the money.

In late 2022, Plump demanded that defendant Rogers and Kindall manufacture an "invoice" that would support his claims that checks from Piper Davis to Kindall were for a "dance team." Defendant Rogers and Kindall had a false invoice prepared indicating that a $40,000 check in December 2022 from Piper Davis to Kindall was to support the dance team that had previously refused to accept defendant Rogers' and Kindall's offer of Fund money in exchange for kickbacks.

Each time defendant Rogers and Kindall received a check from Piper Davis, Kindall deposited the check into her bank account and spent the money on personal expenditures for herself and defendant Rogers, including cash withdrawals and credit card payments.

Defendant Rogers and Kindall engaged in a similar scheme with Organization #1. Between approximately March 2019 and November 2019, defendant Rogers, with Kindall's assistance, directed Fund money to Organization #1. Defendant Rogers and Kindall required Individual #1 to pay part of the Fund money back to Kindall and defendant Rogers as an "administration fee." In support of defendant Rogers's recommendation that Organization #1 receive Fund money, defendant Rogers and Kindall submitted and caused to be submitted false and fraudulent information regarding Organization #1's intended use of Fund money and concealed from the Committee that defendant Rogers and Kindall were receiving money from Organization #1. Defendant Rogers's recommendations that Organization #1 receive Fund money were sent via email, and the Fund also sent emails confirming that Organization #1 had been approved to receive money. These emails caused interstate wire transmissions.

Defendant's Initials _____

Organization #1 received two checks from the Fund totaling $10,000, and Individual #1 gave two checks totaling $1,800 to Kindall for the "administration fee." Kindall deposited the checks into her bank account, and spent the money on personal expenditures for herself and defendant Rogers.

## Obstruction of Justice

From in or about April 2023, and continuing to in or about November 2023, the exact dates being unknown, within Jefferson County, in the Northern District of Alabama, and elsewhere, defendant Rogers did knowingly and willfully combine, conspire, and agree with Kindall, and with others known and unknown, to corruptly persuade and engage in misleading conduct toward another person with intent to hinder, delay, and prevent the communication to law enforcement officers of information relating to the commission and possible commission of a federal offense, in violation of Title 18, United States Code, Section 1512(b)(3), and to knowingly make material false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the United States Government, in violation of Title 18, United States Code, Section 1001.

## Manner and Means of the Conspiracy

It was a part of the conspiracy that defendant Rogers and Kindall would and did attempt to convince Individual #1 to give false information to criminal investigators with the Federal Bureau of Investigation and Internal Revenue Service as part of their investigation of the fraud committed against the JCCSF.

It was a further part of the conspiracy that defendant Rogers and Kindall would and did agree that Kindall would accept full responsibility for the crimes involving the fraud against the JCCSF and falsely state that defendant Rogers did not participate in the scheme in exchange for defendant Rogers' promise to take care of personal matters for Kindall if she went to prison.

## Overt Acts

In furtherance of the conspiracy and to achieve the objects thereof, the conspirators committed and caused to be committed the following overt acts, among others, in the Northern District of Alabama and elsewhere:

Defendant's Initials

On or about April 18, 2023, during a discussion about the federal investigation, defendant Rogers told Kindall that the receipt of money from Individual #1 shows a pattern of conduct. By that statement, defendant Rogers meant that Individual #1's testimony regarding the "administration fee" he paid, when considered with Plump's testimony, would strengthen the government's case. Defendant Rogers and Kindall agreed to offer Individual #1 additional grant money to influence him to give false statements to federal investigators.

On or about April 25, 2023, defendant Rogers called Individual #1 about obtaining additional grant money for Organization #1 and Kindall sent a grant application to Individual #1.

On or about May 9, 2023, defendant Rogers requested that a department of the State of Alabama issue a grant to Organization #1.

On or about July 18, 2023, defendant John Westley Rogers, Jr. informed Individual #1 that he had been awarded additional grant money.

Defendant Rogers convinced Kindall to accept full responsibility for the crimes they committed, and falsely state that defendant Rogers was not involved, in exchange for defendant Roger's promise to pay Kindall's mortgage and take care of her children if Kindall went to jail. On or about May 25, 2023, during a meeting she requested, Kindall falsely stated to federal agents and prosecutors that defendant Rogers did not know Kindall was receiving JCCSF money back from Plump.

**The Defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the Defendant's sentence. The Defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the Defendant and/or any co-conspirators may have committed.**

**JOHN WESTLEY ROGERS, JR.**

Defendant's Initials

## III.     **RECOMMENDED SENTENCE**

Subject to the limitations in Section VII regarding subsequent conduct and pursuant to Rule 11(c)(1)(B) of the *Federal Rules of Criminal Procedure*, the United States will recommend the following disposition:

**A.**     That the Defendant be awarded a two (2) level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. The United States agrees to make a motion pursuant to USSG §3E1.1(b) for an additional one-level decrease in recognition of the Defendant's prompt notification to the United States of the intention to enter a plea of guilty. The United States may oppose any adjustment for acceptance of responsibility if the Defendant: (1) fails to admit each and every item in the factual stipulation; (2) denies involvement in the offense; (3) gives conflicting statements about the Defendant's involvement in the offense; (4) is untruthful with the Court, the United States, or the United States Probation Officer; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the Defendant's plea of guilty for any reason other than those expressly enumerated in the "Waiver of Right to Appeal and Post-Conviction Relief" section of this Plea Agreement;

**B.**     That the Court depart from the advisory United States Sentencing Guidelines range pursuant to U.S.S.G. § 5H1.1 (age) and U.S.S.G. § 5H1.4 (physical condition) to offense level 11 and impose a sentence of home confinement at the high end of the resulting guideline range (14 months);

**C.**     That the Defendant be placed on supervised release for a period to be determined by the Court, subject to the Court's standard conditions of supervised release;

**D.**     That the Defendant be required to pay restitution of $197,950.45 to the Jefferson County Community Service Fund jointly and severally with Fred Lee Plump and Varrie Johnson Kindall;

Defendant's Initials

E.     That the Defendant be required to comply with the forfeiture provisions set forth in section XII of this Agreement; and

F.     That the Defendant pay a special assessment of $200, said amount due and owing as of the date sentence is pronounced.

## IV.   WAIVERS

### A.   *STATUTE OF LIMITATIONS WAIVER*

**In consideration of the recommended disposition of this case, I, JOHN WESTLEY ROGERS, JR., hereby understand, acknowledge, and agree that if this Plea Agreement is set aside for any reason, I will not assert any defense based on any applicable statute of limitations or the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, that includes the passage of time from and including the date of this plea agreement until and including the date of entry of any order setting this plea agreement aside.**

### B.   *RIGHT TO APPEAL AND POST-CONVICTION RELIEF*

**In consideration of the recommended disposition of this case, I, JOHN WESTLEY ROGERS, JR., hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the Court might impose.  Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any**

Defendant's Initials _____

post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255, and any argument that (1) the statute(s) to which I am pleading guilty is or are unconstitutional or (2) the admitted conduct does not fall within the scope of the statute(s).

The Defendant reserves the right to contest in an appeal or post-conviction proceeding(s) the following:

1.  Any sentence imposed in excess of the applicable statutory maximum sentence(s);

2.  Any sentence imposed in excess of the Guidelines range determined by the Court at the time sentence is imposed; and

3.  Ineffective assistance of counsel.

The Defendant acknowledges that before giving up these rights, the Defendant discussed the *United States Sentencing Guidelines* and their application to the Defendant's case with the Defendant's attorney, who explained them to the Defendant's satisfaction. The Defendant further acknowledges and understands that the United States retains its right to appeal where authorized by statute.

## C.    ADISMISSIBILITY OF PLEA, PLEA DISCUSSIONS, AND RELATED STATEMENTS

In consideration of the recommended disposition of this case, I, JOHN WESTLEY ROGERS, JR., hereby understand, acknowledge, and agree that after affixing my signature to this Plea Agreement, I waive and will not assert

Defendant's Initials

the protections provided within Rule 11(f) of the *Federal Rules of Criminal Procedure* or Rule 410 of the *Federal Rules of Evidence*, and understand and agree that all statements made during the course of plea negotiations, including the Factual Basis for Plea, can be used against me in any proceeding.

I, JOHN WESTLEY ROGERS, JR., hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into these waivers.

JOHN WESTLEY ROGERS, JR.

## V.     UNITED STATES SENTENCING GUIDELINES

The Defendant's counsel has explained to the Defendant, that considering the United States Supreme Court's decision in *United States v. Booker*, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the Court's discretion and is not required to be within the guideline range. The Defendant agrees that, pursuant to this agreement, the Court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the Defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

Defendant's Initials

## VI.     <u>AGREEMENT NOT BINDING ON COURT</u>

The Defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the Defendant and that any sentence recommended by the United States is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the United States's recommendation. Further, the Defendant understands that if the Court does not accept the United States's recommendation, the Defendant does not have the right to withdraw the guilty plea.

## VII.     <u>VOIDING OF AGREEMENT</u>

The Defendant understands that if the Defendant (a) violates any federal, state, or local law or any condition of pretrial release after entering into this Plea Agreement, (b) moves the Court to accept a plea of guilty in accordance with, or pursuant to, the provisions of *North Carolina v. Alford*, 400 U.S. 25 (1970), (c) tenders a plea of *nolo contendere* to the charges, (d) violates any other term of this Plea Agreement, and/or (e) does or says anything that is inconsistent with the acceptance of responsibility, the Plea Agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the Defendant to withdraw a previously entered plea.

Defendant's Initials _____

## VIII.    OTHER DISTRICTS AND JURISDICTIONS

The Defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## IX.    COLLECTION OF FINANCIAL OBLIGATION

To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to:

- fully disclose all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party;

- promptly submit a completed financial statement to the United States Attorney's Office, in a form that it provides and as it directs;

- identify all assets over which the Defendant exercises or exercised control, directly or indirectly, within the past five years, or in which the Defendant has or had during that time any financial interest;

- take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned at any time by the Defendant;

- undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of the Defendant's tax returns for the previous five years.

The Defendant further agrees that the above information, as well as any of the Defendant's financial statements and disclosures, will be complete, accurate, and

truthful. Finally, the Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on the Defendant to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

## X.  AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the Defendant's Plea Agreement, the Defendant admits to the above facts associated with the charges and relevant conduct for any other acts.  The Defendant understands and agrees that the relevant conduct contained in the factual basis will be used by the Court to determine the Defendant's range of punishment under the advisory sentencing guidelines. The Defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This Agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors, which may constitute or relate to relevant conduct. Additionally, if this Agreement contains any provisions providing for the dismissal of any counts, the Defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any and waives objection to the inclusion of that restitution in any order issued by the Court.

Defendant's Initials

## XI.    TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the Defendant understands and acknowledges that this Agreement does not apply to or in any way limit any pending or prospective proceedings related to the Defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

## XII.    FORFEITURE

The Defendant agrees to consent to the immediate entry of a final order of forfeiture against the Defendant, pursuant to Fed. R. Crim. P. 32.2(b)(l), in the amount of $197,950.45, which represents proceeds the Defendant personally obtained, controlled, and benefitted from as a result of the offense(s) alleged in Count One of the Second Superseding Indictment and to which the Defendant is indicating the Defendant's desire to plead guilty by way of this written Plea Agreement. For purposes of entering said order of forfeiture, the Defendant acknowledges that a nexus exists between said amount and the criminal offense(s) to which the Defendant is pleading guilty.

The Defendant acknowledges that if, due to an act or omission of the Defendant, directly forfeitable property: (i) cannot be located upon the exercise of due diligence; (ii) has been transferred or sold to, or deposited with, a third party; (iii) has been placed beyond the jurisdiction of the Court; (iv) has been substantially

Defendant's Initials

diminished in value; or (v) has been commingled with other property which cannot be divided without difficulty, as a result, the United States is authorized under law to seek the forfeiture of any and all assets of the Defendant as substitute assets for the purpose of satisfying the final order of forfeiture until same is satisfied in full. As a result, the Defendant consents to the forfeiture of all of the Defendant's property up to the value of $197,950.45, representing proceeds the Defendant personally obtained, controlled, and benefitted from as a result of the offenses alleged in Count One of the Second Superseding Indictment.

The Defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding. The Defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 regarding notice of the forfeiture in the Second Superseding Indictment, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The Defendant also waives the requirements of Fed. R. Crim. P. 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement. The Defendant acknowledges that the Defendant understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the Defendant of this under Fed. R. Crim. P. 11(b)(1)(J) at the time the Defendant's guilty plea is accepted.

Defendant's Initials

The Defendant further waives all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including any Double Jeopardy challenges that the Defendant may have to the entry of a Forfeiture Order before sentencing, and any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this Second Superseding Indictment and/or any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

### Non-Abatement of Criminal Forfeiture

The Defendant agrees that the forfeiture provisions of this Plea Agreement are intended to, and will, survive the Defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this Agreement. The forfeitability of any particular property pursuant to this Agreement shall be determined as if the Defendant had survived, and that determination shall be binding upon the Defendant's heirs, successors, and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full. To the extent that forfeiture pursuant to this agreement requires the Defendant to disgorge wrongfully obtained criminal proceeds for the benefit of the Defendant's victims, the Defendant agrees that the forfeiture is primarily remedial in nature.

Defendant's Initials

## XIII. **IMMIGRATION STATUS**

The Defendant recognizes that pleading guilty may have consequences with respect to the Defendant's immigration status if the Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the Defendant is pleading guilty. The Defendant's guilty plea and conviction make it practically inevitable and a virtual certainty that the Defendant will be removed or deported from the United States if the Defendant is not a citizen of the United States. Removal and other immigration consequences are the subject of a separate proceeding, however; and the Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Understanding all of this, the Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any immigration consequences that plea may entail, even if the consequence is automatic removal from the United States.

## XIV. **DEFENDANT'S ACKNOWLEDGEMENT**

I have read and understand the provisions of this Plea Agreement consisting of **22** pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront,

Defendant's Initials

cross-examine, or compel the attendance of witnesses, to present evidence on my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO PROMISES OR REPRESENTATIONS OTHER THAN THOSE IN THE AGREEMENT HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

 NONA

I understand that this plea agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Plea Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Plea Agreement, both individually and as a total binding agreement.

3/4/2024
DATE

JOHN WESTLEY ROGERS, JR.
Defendant

Defendant's Initials

## XV.     COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client

of all of my client's rights and all possible defenses. My client has conveyed to me

that my client understands this Plea Agreement and consents to all its terms.   I

believe the plea and disposition set forth herein are appropriate under the facts of

this case and are in accordance with my best judgment. I concur in the entry of the

Plea Agreement on the terms and conditions set forth herein.

3/4/2024
_____
DATE

_____
**JOHN C. ROBBINS**
Defendant's Counsel

## XVI.     UNITED STATES' ACKNOWLEDGMENT

I have reviewed this matter and this Plea Agreement and concur that the plea

and disposition set forth herein are appropriate and are in the interests of justice.

**PRIM F. ESCALONA**
**United States Attorney**

3/11/24
_____
DATE

_____
**GEORGE A. MARTIN, JR.**
**CATHERINE L. CROSBY**
**RYAN S. RUMMAGE**
Assistant United States Attorneys

Defendant's Initials _____