# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | 2:23-cr-00311-LSC-GMB |
| | ) | |
| **JOHN WESTLEY ROGERS, JR.** | ) | |

### SENTENCING MEMORADUM OF THE UNITED STATES

The United States recommends that John Rogers be sentenced to 14 months imprisonment for abusing his elected office to steal and divert $197,950.45 from Jefferson County taxpayers and the charitable purposes for which it was intended. Additionally, Rogers should be ordered to pay restitution to the Jefferson County Community Service Fund (the "Fund") and forfeit the proceeds of his crimes. This memorandum addresses Rogers' objection to the Presentence Investigation Report and breach of the Plea Agreement. It then discusses why a 14-month sentence of imprisonment is reasonable under the factors set forth in 18 U.S.C. § 3553(a).[1]

I. The Conspirators and Their Crimes

A. The Conspirators

John Westley Rogers, Jr. was a long-serving member of the Alabama House of Representatives elected to represent the citizens of District 52 in Jefferson County,

---

[1] In separate sentencing memoranda, the United States recommends that the Court sentence Varrie Johnson Kindall to 36 months imprisonment and Fred Plump to 12 months imprisonment.

1

Alabama. Fred Lee Plump, Jr. served as Executive Director of the Piper Davis Youth Baseball League ("Piper Davis"). Piper Davis was a nonprofit organization that claimed to provide a positive experience for inner city youth in Jefferson County through sports. Varrie Johnson Kindall was defendant Rogers' personal and professional assistant. Additionally, she had romantic relationships with both Rogers and Plump.

### B. The Defendants Steal from the Fund and Obstruct Justice

Beginning in March 2019, and continuing until April 2023, Rogers, Kindall, and Plump conspired together to defraud the Fund, a taxpayer-supported and legislator-controlled fund designed to serve the public good. Additionally, each of the defendants attempted to obstruct justice and thwart federal investigators and prosecutors.[2]

In or about March 2019, Rogers called Plump "out of the blue" and offered to provide a donation from the Fund to Piper Davis. Soon thereafter, during a meeting at Rogers' office in Jefferson County, Rogers and Kindall demanded that Plump pay half of the money Piper Davis received back to them as kickbacks. Plump agreed because he understood that he would not receive Fund money if he did not pay the kickbacks.

---

[2] Kindall separately stole a combined total of $88,000 from the Social Security Administration, the Department of Labor's Office of Worker's Compensation Program, and the United Mine Workers of America Pension Plan.

Rogers, in his capacity as an Alabama State Legislator and with Kindall's assistance, recommended during each fiscal year thereafter that most (usually about 85%) of his allotment of Fund money be paid to Piper Davis. Each recommendation was made on a Delegate Request Form that Rogers signed and thereby falsely certified that he had not asked for anything of value for making the recommendation and that Piper Davis' use of the funds would qualify under the purposes listed in the Act establishing the Fund. After the forms were submitted, the Fund Administrator sometimes contacted Plump to request additional information about Piper Davis. Plump made misrepresentations to the Fund about Piper Davis' intended use of the money and concealed that he was paying kickbacks to Rogers and Kindall.

Contemporaneously, Rogers and Kindall contacted the owner of a dance studio and offered $10,000 of Fund money if she promised to give Rogers and Kindall $5,000 of the funds in return. The owner refused. Rogers and Kindall then offered $20,000 with a kickback of $10,000. The owner again refused.

During the conspiracy, Rogers directed Fund money to Piper Davis on nine occasions for a total of approximately $400,000. Plump, in turn, wrote 10 checks to Kindall totaling approximately $200,000. Plump wrote "dance team" or cheerleading on some checks to conceal that the payments were kickbacks. Rogers and Kindall delivered the Fund checks to Plump at the Piper Davis baseball field. After the checks cleared Piper Davis' bank account, Rogers and Kindall returned to

the Piper Davis baseball field to retrieve checks that Plump wrote to her. Rogers was with Kindall on eight of the ten occasions that Kindall received a check from Plump.

Each time Rogers and Kindall received a check from Piper Davis, Kindall deposited the check into her bank account and spent the money on personal expenditures for herself and Rogers, including cash withdrawals and credit card payments.

In late 2022, Plump demanded that Rogers and Kindall manufacture an invoice that would support his claims that checks from Piper Davis to Kindall were for a dance team. Rogers and Kindall had a false invoice prepared indicating that a $40,000 check in December 2022 from Piper Davis to Kindall was to support a dance team.

On March 4, 2023, the day after Plump was first interviewed by FBI and IRS agents about the kickback scheme and served with a Grand Jury subpoena, he corruptly attempted to obstruct justice. Specifically, Plump sent Kindall a text stating "Red Alert" and naming a place for a meeting. Later, when meeting with Kindall, Plump warned Kindall about the investigation and told her to "get your shit in order" and that she needed to find a dance team if she didn't have one.

Rogers and Kindall engaged in a similar scheme with Organization #1. Between approximately March 2019 and November 2019, Rogers, with Kindall's assistance, directed Fund money to Organization #1. Rogers and Kindall required

Individual #1 to pay part of the Fund money back to Kindall and Rogers as an "administration fee." In support of Rogers' recommendation that Organization #1 receive Fund money, Rogers and Kindall submitted and caused to be submitted false and fraudulent information regarding Organization #1's intended use of Fund money and concealed that Rogers and Kindall were receiving money from Organization #1.

Organization #1 received two checks from the Fund totaling $10,000, and Individual #1 gave two checks totaling $1,800 to Kindall for the "administration fee." Kindall deposited the checks into her bank account and spent the money on personal expenditures for herself and Rogers.

Rogers and Kindall attempted to convince Individual #1 to give false information to the FBI and IRS. On or about April 18, 2023, during a discussion about the federal investigation, Rogers told Kindall that the receipt of money from Individual #1 shows a pattern of conduct. By that statement, Rogers meant that Individual #1's testimony regarding the "administration fee" he paid, when considered with Plump's potential testimony, would strengthen the government's case. Rogers and Kindall agreed to offer Individual #1 additional grant money to influence him to give false statements to federal investigators. Rogers called Individual #1 about obtaining additional grant money for Organization #1 and Kindall sent a grant application to Individual #1. Rogers then requested that a

department of the State of Alabama issue a grant to Organization #1 and informed Individual #1 that he had been awarded additional grant money.

Additionally, Rogers convinced Kindall to accept full responsibility for the crimes they committed, and falsely state that Rogers was not involved in the scheme, in exchange for Rogers' promise to pay Kindall's mortgage and take care of her children if Kindall went to prison. On or about May 25, 2023, during a meeting she requested, Kindall falsely stated to federal agents and prosecutors that Rogers did not know Kindall was receiving Fund money back from Plump.

**II.    John Rogers Should Receive 14 Months Imprisonment**

The Presentence Investigation Report correctly calculates the total offense level as 16 and criminal history category as I, resulting in an advisory Guidelines range of 21-27 months. The United States recommends that the Court sentence Rogers to 14 months imprisonment and order him to pay restitution and forfeiture of $197,950.45. The recommended sentence is sufficient but not greater than necessary to promote the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) and is reasonable considering the factors set forth in 18 U.S.C. § 3553(a).

**A. The Obstruction of Justice Enhancement**

Rogers lodges factual and legal objections to the two-level obstruction of justice enhancement in paragraph 69 of the PSR. In his objection, Rogers claims—despite his guilty plea—that he does not remember conspiring with Kindall to have

her accept full responsibility for their crimes in exchange for his promise to care for her children and pay her mortgage. [Doc. 70, para. 2.] Rogers also claims that he does not know when this "alleged" promise would have been made. [*Id.*, para. 3.] Additionally, he argues that this conduct does not amount to a "significant further obstruction" as required in U.S.S.G. § 3C1.1, comment. (n.7). [*Id.*, para. 4-5.]

The evidence supports this enhancement. In the Factual Basis of his Plea Agreement, above his signature acknowledging that the Court can use the stipulated facts in calculating the sentence, Rogers admitted that he "convinced Kindall to accept full responsibility for the crimes they committed, and falsely state that defendant Rogers was not involved, in exchange for defendant Rogers's promise to pay Kindall's mortgage and take care of her children if Kindall went to jail." [Doc. 62 at 9.] Rogers further stipulated that Kindall executed their obstructive plan on May 25, 2023, when she falsely stated to federal agents and prosecutors that Rogers did not know she was receiving kickbacks from Plump. [*Id.*] These facts prove by a preponderance of the evidence that Rogers willfully obstructed or impeded the investigation, prosecution, or sentencing of the underlying fraud offenses. *See United States v. Garcia*, 13 F.3d 1464, 1471 (11th Cir. 1994) (applying enhancement because defendant asked witness to falsely advise FBI that defendant knew nothing about a theft); *see also United States v. Turner*, 626 F.3d 566, 572 (11th Cir. 2010)

7

(government bears the burden of establishing by a preponderance of the evidence the facts necessary to support a sentencing enhancement).

Rogers' legal argument also lacks merit. Because the count for obstruction of justice is grouped with the count for the underlying (fraud) offense, [PSR at para. 64], the offense level for the group of closely related counts is the offense level for the underlying offense increased by the two-level adjustment for obstruction of justice. U.S.S.G. § 3C1.1, comment. (n.8).

### B. Rogers Breached the Plea Agreement

Rogers' assertions in his objections to the PSR, which deny knowledge of the conspiracy to obstruct justice to which he pleaded guilty, [*see* Doc. 70], violate the Plea Agreement. Section VII of the Plea Agreement provides, in relevant part: "The Defendant understands that if the Defendant … (e) does or says anything that is inconsistent with the acceptance of responsibility, the Plea Agreement will become NULL and VOID at the election of the United States, and the United States will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein. Further, such election will not entitle the Defendant to withdraw a previously entered plea." [Doc. 62, para. VII.]

In his objections, Rogers attacks the facts supporting his guilty plea to the conspiracy to obstruct justice charged in count 26. Rogers states that he admitted the facts essential to that charge despite not having any memory of the making or timing

8

of the obstructive promise. [Doc. 70, para. 2.] Because the statements in his objections are inconsistent with acceptance of responsibility, the United States exercises the right to declare the Plea Agreement null and void. This decision does not entitle Rogers to withdraw his guilty plea.[3]

### C. Fourteen Months is a Reasonable Sentence

Fourteen months imprisonment is a reasonable sentence considering the factors set forth in 18 U.S.C. § 3553(a) and is sufficient but not greater than necessary to promote the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

### 1. The Nature and Circumstances of the Offense

Rogers was entrusted with the legislative prerogative of doling out $100,000 of taxpayer money annually for charitable purposes. But, for the most part, he was charitable only to himself and the woman who supported him personally and professionally. Time and again Rogers abused the trust inherent in the office he held for decades. Rather than ensuring the Fund's money was used to help inner city kids learn to play baseball, as he promised would be done, Rogers stole $200,000 to support himself and his lover. Rogers helped destroy Piper Davis and deprived other worthy charities to satiate his greed. As Rogers predicted when the Fund was

---

[3] The Plea Agreement also provides that the United States may oppose any adjustment for acceptance of responsibility if the Defendant fails to admit all facts in the factual stipulation, denies involvement in the offense, or gives conflicting statements about his involvement in the offense. [Doc. 62, para. III.A.] Because Rogers apparently maintains his acceptance of responsibility for his participation in the fraud scheme, the United States will not oppose the three-level acceptance of responsibility adjustment despite his recent denial of responsibility for the obstruction offense.

established, it could be easily manipulated and would become "legalized bribery." He took full advantage.

### 2. The History and Characteristics of the Defendant

Rogers is 83 years old. Although he takes a long list of medications for various ailments, the PSR notes that he is in "fairly good physical health," [PSR, para. 92-93], and did not exhibit any obvious symptoms of mental health issues or impairment during the presentence interview, [*Id*., para. 94]. The United States is recommending a sentence below the advisory Guidelines range because of Rogers' age.

### 3. The Need to Avoid Unwarranted Sentencing Disparities

A 14-month sentence will be compatible with sentences imposed on similarly situated defendants. According to the Judiciary Sentencing Information summarized in the PSR, the average sentence for the 437 defendants in the last five fiscal years who had a Final Offense Level of 16 under § 2B1.1 and a Criminal History Category of I, after excluding defendants who received a substantial assistance departure, was 14 months. [PSR, para. 129.] Also, in a grant kickback case involving substantially less money and cooperation by the defendant, 68-year-old former Alabama legislator Bryant Melton was sentenced in 2008 to 15 months imprisonment for conspiring with Bill Langston at the Alabama Fire College to illegally divert $68,000. https://www.tuscaloosanews.com/story/news/2008/08/15/melton-punished-with-jail-sentence/27761046007/.

### 4. Fourteen Months is Sufficient but Not Greater Than Necessary

The recommended sentence is sufficient but not greater than necessary to promote the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2). Under the somewhat unique circumstances Rogers presents, a 14-month sentence will reflect the seriousness of his crimes, promote respect for the law, and provide just punishment. Additionally, the 14-month recommended sentence will afford much needed general deterrence to similar criminal conduct by state and local officeholders. Given Rogers' longevity and status in the Alabama Legislature at the time of his conviction, the recommended sentence will serve as a powerful forewarning to his former colleagues and future officeholders.

### III. Conclusion

Based on the foregoing argument and authority, and upon the entire record, the United States respectfully requests that the Court sentence John Rogers to imprisonment for 14 months and order him to pay restitution of $197,950.45 to the Jefferson County Community Service Fund jointly and severally with coconspirators Fred Plump and Varrie Johnson Kindall. Additionally, the United States requests that the Court order Rogers to forfeit $197,950.45 as proceeds of the fraud scheme.

        Respectfully submitted,

        PRIM F. ESCALONA
        UNITED STATES ATTORNEY


        */s/ George A. Martin, Jr.*
        George A. Martin, Jr.
        Catherine L. Crosby
        Ryan S. Rummage
        Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I certify that on July 10, 2024, I electronically filed this document via CM/ECF and thereby caused a copy to be served on the defendant's counsel of record.

PRIM F. ESCALONA
UNITED STATES ATTORNEY


*/s/ George A. Martin, Jr.*
George A. Martin, Jr.
Assistant United States Attorney
1801 Fourth Avenue North
Birmingham, Al 35203
George.martin@usdoj.gov
205-244-2115